(No. 27823.—

BAY ISLAND DRAINAGE AND LEVEE DISTRICT No. 1, Appellee, *vs.* WILLIAM NUSSBAUM *et al.,* Drainage Commissioners, Appellants.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 16, 1944.*

EAGLE & EAGLE, of Rock Island, for appellants.

WOOD, McNEAL & WARNER, of Moline, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff, Bay Island Drainage and Levee District, brought a suit in the county court of Mercer county against the commissioners of Sub-District No. 1 of Drainage Union District No. 1, seeking to have determined the amount which the subdistrict, referred to herein as defendant,

should contribute toward the cost of operating a pumping plant by the plaintiff district. The action was brought under section 10 of the act relating to adjoining drainage districts. Ill. Rev. Stat. 1943, chap. 42, par. 228.

Pursuant to that statute, plaintiff drainage district, in July, 1943, filed its report of commissioners listing pumping expenses for the year beginning September 1, 1943, aggregating $20,807. This report indicated the percentage of liability of defendant district as 20.733 per cent of the total cost, or a sum of $4313.91. Objections were filed to the report, which were overruled, and the commissioners of the subdistrict answered. Plaintiff filed a replication and evidence was heard. At the close of all the evidence plaintiff moved for a directed verdict in its favor. This motion was allowed and judgment rendered requiring contribution by the defendant subdistrict in the sum specified.

Plaintiff district lies directly south and is about five times the size of defendant subdistrict. These drainage districts lie east of the Mississippi river in Mercer county. They are bounded on the east by natural bluffs of the valley and on the west by a levee extending along the Mississippi river. The waters of these districts drain in a general southerly direction through the ditches of the districts and are pumped over the levee and into the river. Because the waters from the defendant subdistrict move through ditches into the plaintiff district, which pumps it out, the subdistrict is required, under the statute, to contribute its proportionate share of the cost of the pumping. Plaintiff contends that that percentage is 20.733, while defendant says that a fair proportion of the cost is a substantially less percentage. The issues on this appeal arise out of the action of the court in directing a verdict for the plaintiff and the refusal of the court to permit the defendant to show certain contributions by the Federal Government, as to part of which, defendant claims, it is entitled to credit.

.The proof offered by the plaintiff showed the acreage, watershed, length of levee in both districts and the relative percentages which these in each district bore to the 'total acreage, watershed and levees. Defendant introduced testimony which, it is argued, tends to establish that a substantially less rate or proportion of the total pumping cost should be borne by the defendant.

First and principal of the questions raised is whether the court erred in directing a verdict for the plaintiff. In determining this question it is unnecessary to go at length into the evidence in the record, since such an issue depends upon whether the defendant presented any evidence which, when viewed in its aspect most favorable to the defendant can be said to have constituted evidence tending to support its claim that the proportion which plaintiff claims defendant should pay is too high. On a motion to direct a verdict, the unimpeached evidence of the party against whom the motion is directed must be accepted as true, and the most favorable interpretation and inference such evidence will bear must be given it, and, if there is any evidence tending to support the claim of the party against whom the motion is made, it is error to direct a verdict. (*Mitchell v. Louisville and Nashville Railroad Co.* 375 Ill. 545; *Walldren Express Co.* v. *Krug,* 291 Ill. 472.) In considering a motion for a directed verdict courts cannot weigh the evidence but are required to resolve all controverted questions of fact in favor of the parties opposing the motion. (*Shannon* v. *Nightingale,* 321 Ill. 168; *Garrity* v. *Catholic Order of Foresters,* 243 Ill. 411; *Campbell* v. *Chicago, Rock Island and Pacific Railway Co.* 243 Ill. 620; *Bailey* v. *Robison,* 233 Ill. 614.) In determining whether the court erred in directing a verdict, it is immaterial upon which side the evidence is introduced. If evidence introduced by either side, with its legitimate and natural inferences tends to establish the claim of the party opposing the motion, the motion should not be allowed. In a proceeding where the determinative fact as to the extent to which

property in a drainage district is benefited, or whether it is benefited at all, must be and is largely based upon opinion evidence or the estimate of witnesses, it is peculiarly within the province of the jury to determine that issue. *Merlo* v. *Public Service Co.* 381 Ill. 300; *Inlet Swamp Drainage Dist.* v. *Gehant,* 286 Ill. 558; *North Richland Drainage Dist.* v. *Karr,* 280 Ill. 567; *City of Chicago* v. *Weber,* 260 Ill. 105.

Prior to 1943 defendant subdistrict's proportion of the pumping expense was agreed upon and judgment was entered in accordance with that agreement. The amount ranged from 11 plus percent to 23 plus percent of the total pumping cost. The commissioners' report in this record shows an estimate of 260 days of pumping necessary for the year. Testimony of seven witnesses on behalf of the defendant subdistrict is that for only a portion of those 260 days,—ranging from 25, as given by some witnesses, to 70, as given by others,—was the pumping of any benefit at all to the defendant. The plain purport of this testimony was to show that instead of defendant subdistrict's liability being 20 plus percent of the total cost of pumping, that percentage should be substantially less. If the jury believed the witness who stated that the pumping was of benefit a given number of days less than the 260 estimated by the commissioners' report, the jury had evidence before it on which it could compute the liability of defendant.

Counsel for plaintiff argue that because defendant presented no proof in dollars and cents of an amount which it should pay, there is no competent evidence in the record disputing plaintiff's claim. They cite cases having to do with assessment of land in drainage districts in which landowners claim their land is assessed more than it is benefited, and in which this court held that in the absence of some showing as to the amount they claim the land was benefited, such objections will not be considered. Those cases are not applicable here. Defendant's evidence tends to establish not only that the greater fall of the land in the sub-

district constitutes it a gravity district in which the water passes by natural flow to and upon the lands of the plaintiff district without pumping, but, also, the evidence of its seven witnesses tends to establish definite percentages of total cost of pumping for which defendant is liable, and from which the jury, if it believed that evidence, might be justified in believing, not only that the percentage fixed and demanded by the plaintiff district is too high, but could also determine what would be a just proportion of the cost chargeable to the defendant district. There was competent evidence on this issue before the jury and it was error to refuse to submit the cause to it.

The second question involved in this record is whether the court erred in refusing to permit proof by the defendant of the payment of certain sums by the Federal government, which defendant contends should be applied to reduce the cost of the pumping. It appears that by reason of building certain dams in the Mississippi river, the level of the water along the levee on the east side of the Mississippi was raised, causing additional seepage to come into the ditches of the districts involved herein. Defendant sought to show that the Federal government had, by reason of this additional seepage, paid to plaintiff district, for the benefit of both districts, various sums in prior years, none of which was credited to the cost of pumping, in which defendant is required to participate, and also to prove an estimated amount of $3000 the Federal government was to pay during the current year, for this purpose. A general objection was made to this offer of proof and was sustained.

Counsel for plaintiff here say that there was no formal offer of proof, and that it is wholly immaterial what the Federal government paid to the plaintiff district. We think that the purpose of the offer is clearly to be seen as an endeavor to show that the amount estimated by the commissioners of the plaintiff district as the pumping cost should be reduced by the amount which the Federal government contributed to that purpose. It appears from the report of

the Federal government engineers that they, in determining the amount of additional seepage and therefore damage to these districts, found that about 20 per cent of that damage accrued against the defendant subdistrict and 80 per cent against the plaintiff district. The whole amount was paid to the plaintiff district because all of the water of both districts was pumped out by the plaintiff district. Plaintiff, in its contention that refusal of such evidence was not error, relies on *Ittner Brick Co.* v. *Ashby,* 198 Ill. 562. In that case it was held that where no offer of evidence and no statement of what he expects to prove is made by counsel, and the record is silent as to what was to be proved by the witness, it does not appear that the proponent of the testimony was damaged by the refusal or that he would have been benefited by the evidence. As we have indicated, such is not the condition of this record. Here the pleadings raise the issue whether defendant subdistrict was entitled to a credit against its share of the pumping expense, to the amount the Federal government paid for damages to defendant. While it is true that all the water of both districts is pumped out by the plaintiff district, yet it is also true that since the defendant subdistrict is paying a proportionate share of the actual cost of such pumping, and the Federal government contributes to that cost on the basis of 20 per cent to the defendant subdistrict, it would seem but reasonable and fair, if such be the facts, that the amount which defendant subdistrict shall pay should be credited with its proportionate share of the money contributed by the Federal government.

Without determining anything other than the admissibility of such testimony, we are of the opinion that the court erred in refusing to permit the making of this proof. For errors indicated herein, the judgment of the county court of Mercer county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*